IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES DSCHAAK                                    Case No. 3:13-cv-02127-MA

      Plaintiff,                       OPINION AND ORDER

  v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY

      Defendant.

MERRILL SCHNEIDER
Schneider Kerr & Gibney Law Offices
PO Box 14490
Portland, OR 97293

  Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
RONALD K. SILVER
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

DAPHNE BANAY
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

  Attorney for Defendant

1 - OPINION AND ORDER

Marsh, Judge

Plaintiff James Dschaak seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, I affirm the final decision of the Commissioner.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for SSI on September 11, 2007, alleging disability beginning December 31, 1993, due to chronic pain in his back and knees as well as anxiety and depression.

After being denied at the initial and reconsideration levels, plaintiff requested and was granted a first hearing before an administrative law judge (ALJ) on October 14, 2009. The ALJ issued an unfavorable decision on November 19, 2009, which plaintiff appealed to this court. On September 27, 2011, this court reversed and remanded the decision pursuant to Sentence Four of 42 U.S.C. § 406 for further administrative proceedings. See Tr. 606, 610-62.

A different ALJ held a second hearing on July 25, 2013, at which plaintiff appeared with his attorney and testified. A vocational expert (VE), Steven R. Cardinal, also appeared and testified. On August 14, 2013, the ALJ issued an unfavorable

2 - OPINION AND ORDER

decision. The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's August 14, 2013 decision became the final decision of the Commissioner for purposes of review.

Born in 1971, plaintiff was 42 years old on the date of the ALJ's adverse decision. Plaintiff completed tenth grade and has a limited education. Plaintiff's past relevant work includes saw operator and car washer.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset of disability. At step two, the ALJ found that plaintiff had the following severe impairments: exotoses with osteochrondomas, lumbar spine impairments, left knee disorders, pain disorder, personality disorder, provisional borderline intellectual functioning, and

3 - OPINION AND ORDER

substance use disorder. At step three, the ALJ found that plaintiff's impairments, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b) except:

> he can lift, carry, push, and pull ten pounds frequently and 25 pounds occasionally and stand for 30 minutes at a time up to three hours total in an eight-hour day. [Plaintiff] is not limited in his ability to sit. He can occasionally climb ramps and stairs; should never climb ladders, ropes, or scaffolds; and can only occasionally kneel, crouch, crawl, and bend. [Plaintiff] can occasionally use foot controls bilaterally. He can understand, remember, and carry out simple instructions, make simple work-related decisions and can accomplish simple routine tasks. [Plaintiff] should not interact with the general public and only rare (ten percent of the time or less) superficial interactions with co-workers. [Plaintiff] should be allowed to work independently and should have no over-the-shoulder supervision in a work environment with minimal changes to the work setting, and can do reading at no more than a fifth grade level.

Tr. 500.

At step four, the ALJ found plaintiff is unable to perform any past relevant work. At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as electronic worker, electrical accessories assembler, and plumbing hardware assembler. Accordingly, the ALJ concluded that plaintiff has not

been under a disability under the Social Security Act from September 11, 2007, through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ failed to include the limitation to one to two step instructions in the RFC; (2) as a result of this error, the ALJ posed an incomplete hypothetical to the Vocational Expert; and (3) the ALJ erred at step five in finding that plaintiff can perform other jobs in the national economy.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied the proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the

Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I.   The ALJ Did Not Err in Assessing the RFC

Plaintiff argues that the ALJ failed to include a limitation to one to two step tasks in the RFC. According to plaintiff, the ALJ endorsed the opinion of examining physician, Cheryl Brischetto, Ph.D., but failed to include a portion of Dr. Brischetto's opinion limiting plaintiff to only one to two step tasks. I disagree.

An ALJ's RFC need only incorporate credible limitations supported by substantial evidence in the record and must be consistent with the restrictions identified in the medical testimony. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *see Bayliss* v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (the ALJ is only required to identify specific, credible limitations in the RFC; "[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary").

On May 12, 2004, Dr. Brischetto performed a psychological and intellectual assessment examination. The examination revealed that plaintiff had a low average vocabulary on the Wechsler Adult Intelligence Testing III (WAIS-III) but exhibited no difficulty

6 - OPINION AND ORDER

with articulation, fluency, or word finding. Tr. 361. Plaintiff presented with logical, organized and goal directed thinking. Tr. 362. He was able to stay alert and focus for the entire two hour session of testing. *Id.* Plaintiff's scores on the WAIS-III were all borderline including: a verbal IQ of 79, a performance IQ of 78, and a full scale IQ of 77. *Id.* Dr. Brischetto further noted that plaintiff was able to follow one step and most two step commands and had some difficulty with multi-step instructions, such as the letter/sequencing test. Tr. 361, 364. Dr. Brischetto diagnosed cannabis dependence and recommended further achievement testing to rule out a cognitive disorder and a learning disorder. Tr. 363-364. Notably, Dr. Brischetto did not provide any opinion on the plaintiff's ability to perform mental tasks in the workplace.

I begin by noting that plaintiff does not challenge the ALJ's assessment of the medical evidence as a whole or the crediting of medical opinions. Instead, plaintiff's argument focuses on a mental status examination finding rather than an actual functional limitation assessed by a medical source. In this case, in the RFC, the ALJ limited plaintiff to "simple" routine work as defined in 20 C.F.R. § 416.968(a). Dr. Brischetto did not assess a functional limitation that plaintiff is *only* able to follow and execute one to two step instructions. In her report, Dr. Brischetto noted as examination findings that plaintiff was able to follow one-step and two step tasks but had difficulty with multi-step instructions. Tr.

361. Plaintiff's argument misstates the facts; the ALJ did not endorse or credit a limitation to one to two step tasks. Pl. Br. (#15) p. 10. In the decision, the ALJ addressed Dr. Brischetto's examination results and concluded that "the findings in Dr. Brischetto's evaluation are consistent with the RFC for simple work." Tr. 503. Thus, the ALJ was not required to include the examination finding of one to two step tasks in the RFC finding.

Furthermore, aside from Dr. Brischetto's finding, plaintiff does not identify any specific, credited medical evidence, establishing that plaintiff is only able to perform one to two step tasks. Indeed, the unchallenged credited medical evidence and medical opinions establish plaintiff can perform more than one to two step instructions. When fashioning plaintiff's mental RFC, the ALJ specifically discussed evidence from examining physician, Ronald V. Duvall, Ph.D., who opined that plaintiff could perform simple routine tasks. Tr. 503, 506. In a mental functional assessment dated March 3, 2013, Dr. Duvall opined that plaintiff could understand, remember, and carry out simple instructions and make simple work-related decisions. Tr. 792. Dr. Duvall opined that plaintiff's history and previous testing show that plaintiff can comprehend and manage "all but the most complex tasks." *Id.*

Citing the functional evaluation by Dr. Duvall, the ALJ gave the opinion that plaintiff was limited to simple routine tasks "great weight." Tr. 506. Consistent with his medical opinion, Dr.

Duvall's February 2013 examination report noted that plaintiff's concentration and comprehension were within normal limits. Dr. Duvall indicated that plaintiff exhibited poor effort on WAIS-IV intelligence testing, but he was able to complete tasks such as spelling, reading, articulation and following of instructions. Tr. 788-89. The ALJ also discussed medical evidence from examining physician, Christopher Tongue, Ph.D., who noted that plaintiff was able to follow a three-step command without difficulty, repeat six digits forward and repeat four unrelated words within a single trial. Tr. 503, 374.

The ALJ also gave some weight to a medical opinion from agency non-examining physician, Dorothy Anderson, Ph.D. Dr. Anderson completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment (MRFC) on February 27, 2008. Tr. 399-415. In the MRFC, Dr. Anderson opined that plaintiff had moderate limitations in only one category: (1) the ability to understand and carry out detailed instructions. Tr. 413, 415. Importantly, Dr. Anderson indicated that plaintiff was not significantly limited in his "ability to understand, remember and carry out simple, routine instructions." Id. On May 6, 2008, Paul Rethinger, Ph.D. affirmed Dr. Anderson's MRFC. Tr. 432. The medical opinions from Drs. Anderson and Rethinger are generally consistent with the overall medical record and further support the ALJ's mental RFC finding.

Therefore, the RFC finding limiting plaintiff to simple and routine tasks was consistent with the credited medical evidence of record and relevant Ninth Circuit law. Thus, the ALJ was not required to include the uncredited limitation of one to two step instructions. Accordingly, I find no error in the ALJ's RFC assessment.

## II.   The ALJ Did Not Err in the Hypothetical Posed to the VE

Likewise, plaintiff contends that the ALJ's hypothetical to the VE did not include a limitation to one to two step tasks. Plaintiff's argument is misplaced.

Plaintiff again conflates examination findings with actual functional limitations. The ALJ is required to pose a hypothetical composed of only limitations that the ALJ found credible and supported by substantial evidence in the record. *Bayliss*, 427 F.3d at 1217; *see also Magallanes v. Brown*, 881 F.2d 747, 756-57 (9th Cir. 1989)(holding that it is proper for an ALJ to limit a hypothetical to restrictions supported by substantial evidence in the record). As discussed above, Dr. Brischetto noted examination findings that plaintiff followed one to two step commands but had some difficulty with multi-step instructions. Tr. 362, 364. The ALJ appropriately discussed and credited all of the medical testimony, including Dr. Brischetto's examination findings, and concluded it was consistent with a limitation to simple, routine work. Tr. 364, 374, 375, 502-06, 787-89, 792. Substantial evidence supports the

ALJ's RFC finding, and thus, the ALJ did not err in posing a hypothetical to the VE.

### III. The ALJ Did Not Err in Finding Other Jobs at Step Five

At step five, the ALJ can rely on VE testimony in determining whether a claimant can perform other work in the national economy. *See Johnson v. Shalala,* 60 F.3d 1428, 1436 (9th Cir. 1995). "The testimony of a vocational expert constitutes substantial evidence supporting an ALJ's decision." *Osenbrock v. Apfel*, 240 F.3d 1157, 1163 (9th Cir. 2001); *see also Bayliss*, 427 F.3d at 1218 ("A VE's recognized expertise provides the necessary foundation for his or her testimony.").

At the hearing, the ALJ posed a hypothetical to the VE incorporating all of the limitations of the RFC finding, with the exception of the limitation to a fifth grade reading level. Tr. 560. The VE identified the following jobs: electrical accessories assembler, Dictionary of Occupational Titles (DOT) #729.687-010 (1,400 jobs in Oregon and 65,000 jobs nationally); plumbing hardware assembler, DOT #706.684-086 (900 jobs in Oregon and 35,000 jobs nationally); and electronics worker, DOT #726.687-010 (4,300 jobs in Oregon and 408,000 jobs nationally). Tr. 561. With the addition of a limitation to a fifth grade reading level, the VE testified that "there might be a very small percentage of those jobs that the reading level may preclude, but it would be very small." Tr. 562. The ALJ requested an estimate of the percentage in

loss of jobs due to the additional limitation. *Id.* The VE estimated that the limitation to a fifth grade reading level would preclude less than ten percent of the identified jobs.[1] *Id.*

## A. Reasoning Level 2 Jobs

Plaintiff contends that because he is limited to only one to two step instructions, he is consequently unable to perform Reasoning Level[2] 2 jobs listed in the DOT. Plaintiff argues that the ALJ erred in finding that plaintiff could perform Reasoning Level 2 jobs.

Several recent cases from this court have held that a limitation to one to two step instructions is a more restrictive limitation than the limitation of simple, routine tasks. *Trujillo v. Colvin*, No. 3:13-cv-0620-SI, 2014 WL 2213218, at *5 (D.Or. May 27, 2014); *see also King v. Colvin*, No. 3:13-cv-01457-ST, 2014 WL

---

[1] Plaintiff does not challenge the numbers of jobs found by the VE. Regardless, despite a loss in ten percent of the jobs identified, the remaining jobs would still constitute "a significant number of jobs" in the national economy. For example, a ten percent reduction in the electronics worker job would leave 3,870 jobs in Oregon and 367,200 jobs nationally. *Compare Beltran v. Astrue*, 700 F.3d 386, 389-390 (9th Cir. 2012)(holding that 135 jobs regionally and 1,680 jobs nationally did not constitute a significant number of jobs that plaintiff could perform) *with Mitchell v. Colvin*, No. 13-35059, 2014 WL 3866458, at *2 (9th Cir. Aug. 7, 2014) (finding that 1,300 regional and 41,000 national jobs constitutes a significant number of jobs).

[2] The DOT lists definitional trailers for each occupation in various skill areas such as mathematics, language development and reasoning. The DOT rates each skill area on a General Educational Development (GED) scale from one to six. *Dictionary of Occupational Titles* (DOT), Appendix C § III.

12 - OPINION AND ORDER

5092216, at *12 (D.Or. October 8, 2014) and *Bobbitt v. Colvin*, No. 3:13-cv-01320-HZ, 2014 WL 2993738, at *9 (D.Or. July 1, 2014). These cases further held that a limitation to one to two step instructions is inconsistent with jobs listed in the DOT requiring a Reasoning Level 2. *Id.* "It is the restriction of jobs requiring only one- or two-step instructions that primarily distinguishes Reasoning Level 1 from Reasoning Level 2." *Trujillo*, 2014 WL 2213218, at *5.

As discussed previously, the ALJ was not required to include a limitation to one to two step instructions into the RFC. For this reason, plaintiff's argument fails. In this case, there is no inconsistency between Reasoning Level 2 jobs and the limitation to simple, routine work. "There appears to be consensus, including an unpublished opinion by the Ninth Circuit, that a restriction to simple repetitive tasks is not inconsistent with a job requiring Reasoning Level 2." *Id.* at *4; *see also Lara v. Astrue*, 305 F. App'x 324, 326 (9th Cir. Nov. 19, 2008)(holding that "someone able to perform simple, repetitive tasks is capable of doing work requiring more rigor and sophistication-in other words, Reasoning Level 2 jobs"). The ALJ's RFC finding that plaintiff is able to perform simple routine tasks is supported by substantial evidence in the overall record. Consequently, the ALJ did not err in relying on the VE's testimony that identified jobs with Reasoning Level 2 at Step Five.

13 - OPINION AND ORDER

## B. Limitation to a Fifth Grade Reading Level

Plaintiff also argues that the jobs identified by the ALJ exceed his RFC finding that he is limited to a fifth grade reading level. Specifically, plaintiff contends that the representative occupations have a Language Development Level[3] of 2 and that a fifth grade reading level is more consistent with Language Development Level 1 jobs. I am not persuaded by plaintiff's argument for several reasons.

First, the Language Development Levels identified in the DOT trailers "may inform but do not necessarily impose job requirements." *Chase v. Colvin,* No. 1:12-CV-00884-AA, 2013 WL 3821630, at *3 (D. Or. July 22, 2013); Social Security Ruling (SSR) 00-4p. The DOT provides "maximum requirements of the occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00-4p. This ruling further states that a "VE ... may be able to provide more specific information about jobs or occupations than the DOT." *Id.* Thus, the ALJ appropriately looked to the VE's testimony to provide additional information regarding the necessary skills to perform the identified jobs.

---

[3] A Language Development Level 2 requires a passive vocabulary of 5,000 to 6,000 words and a reading rate of 190-215 words per minute. *Dictionary of Occupational Titles* (DOT), Appendix C-Components of Definition Trailer, 1991 WL 688702 (1991). A Language Development Level 1 requires recognizing a meaning of 2,500 words and reading at a rate of 95-120 words per minute. *Id.*

Second, plaintiff does not identify *any* authority supporting his assertion that Language Development Level 2 is inconsistent with a fifth grade reading level. Pl. Br. (#15), p. 11-12. After a thorough search, I have found no controlling precedent supporting plaintiff's theory.

Third, cases discussing similar issues appear to undermine plaintiff's argument. To be sure, district courts in several circuits have held that claimants who are functionally illiterate can perform Language Level 1 jobs. *Lawson v. Apfel,* 46 F.Supp.2d 941, 945, 947 (W.D. Mo. 1998)("A decision holding that illiterate individuals could not perform Level 1 jobs would mean that illiteracy was a *per se* disability under the DOT... such a holding is illogical and would contradict Social Security regulations."); *see also Warf v. Shalala*, 844 F.Supp. 285, 288-90 (W.D. Va. 1994); *Dixon v.* Astrue, No. 07-2122 SC, 2008 WL 4334702, at *6 (N.D. Cal. September 22, 2008); Meza *v. Astrue*, No. C-09-1402-EDL, 2011 WL 11499, at *21 (N.D. Cal. January 4, 2011); *Kong v. Astrue*, No. 1:09-cv-01410-SMS, 2011 WL 674048, at *11-13 (E.D. Cal. February 16, 2011)(citing *Lawson* but reversed and remanded the case because the hypothetical did not include a limitation for illiteracy). Similarly, a California district court held that a Language Development Level 1 is not inconsistent with a third grade spelling and writing level. *See McInnis v. Astrue*, No. EDCV 08-1587-RC, 2010 WL 596386, at *6 (C.D. Cal. February 16, 2010). By extension, these

15 - OPINION AND ORDER

cases suggest that a Language Development Level 2 is not inconsistent with a fifth grade reading level.

Fourth, the jobs identified by the VE do not require substantial use of language or reading skills. As described in the DOT, the unskilled jobs identified by the VE include minimal, if any, reading requirements. For example, a plumbing-hardware assembler may "assemble plumbing fixtures and drill holes in fixtures," DOT #706.684-086, while an electrical accessories assembler "assembles mechanical parts of electrical equipment and tests actions of moving parts," DOT #729.687-010. Tr. 562. The electronics worker may "receive verbal or written instructions from a supervisor regarding work assignment," but the majority of the job description involves assembling electronic parts, DOT #726.687-010. These descriptions also are consistent with the VE's testimony that the jobs would require minimal reading. Tr. 562. Therefore, the ALJ's finding that, plumbing-hardware assembler, electronics accessories assembler, and electronics worker jobs do not exceed plaintiff's RFC is supported by substantial evidence.

I have not identified any error committed by the ALJ and therefore, the hypothetical posed to the VE contained all the limitations deemed credible by the ALJ and supported by substantial evidence in the record. Accordingly, the ALJ did not err in finding that plaintiff can perform other jobs in the national economy at

16 - OPINION AND ORDER

Step Five. *Valentine*, 574 F.3d at 694; *Stubbs-Danielson*, 539 F.d at
1175-76.

## CONCLUSION

For the reasons stated above, the Commissioner's final
decision is AFFIRMED.   This action is DISMISSED.

IT IS SO ORDERED.

DATED this __14__ day of JANUARY, 2015.

*Malcolm F Marsh*
Malcolm F. Marsh
United States District Judge
